Filed 12/18/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re Marriage of T.C. and D.C.<br><br>T.C.,<br><br>      Respondent,<br><br>      v.<br><br>D.C.,<br><br>      Appellant. | D073182<br><br>(Super. Ct. No. DN172178) |

APPEAL from an order of the Superior Court of San Diego County, William Y. Wood, Judge.  Reversed.

Dennis G. Temko for Appellant.

Niddrie Addams Fuller Singh and Victoria E. Fuller for Respondent.

D.C. (Husband) appeals from an order granting a petition for modification of spousal support filed by his former spouse T.C. (Wife).[1]  The trial court found that a

_____

[1]  We utilize initials and former generic designations to provide the parties with a semblance of privacy.

significant increase in Wife's earnings since the last spousal support order amounted to "changed circumstances" and on that basis reduced her support payments to Husband. Husband makes several arguments in support of his appeal, including that: the parties' reasonable expectations as expressed in their dissolution agreements contemplated that an increase in Wife's salary would not constitute changed circumstances; the parties intended there would be no cap on additional spousal support irrespective of Wife's earnings; the court improperly found the spousal support provisions ambiguous; and the court's Family Code section 4320 analysis was flawed because it mistakenly treated Husband's income as taxable at the time of separation.[2]

As a threshold matter, we conclude substantial evidence supports the trial court's finding of changed circumstances sufficient to justify reduction of the additional spousal support paid by Wife. But the court erred when, in fashioning the specific modification, it failed to consider the parties' reasonable expectations as expressed in their dissolution agreement that Wife's earnings would continue to increase. We therefore reverse and remand for modification of Wife's spousal support obligations consistent with the principles expressed in this opinion.

---

[2]    Further references are to Family code section 4320 unless otherwise indicated.

FACTUAL AND PROCEDURAL BACKGROUND

A.      *Dissolution of the Marriage and the Relevant Agreements*

Husband and Wife were married for 18-and-a-half years and have two children together.  Both worked outside the home during their marriage.  They separated in 2012 and in 2014, dissolved their marriage according to the terms of two agreements, a Marriage Settlement Agreement (MSA) incorporated into the court's judgment in March 2014, and an August 2014 Post Judgment Stipulation (PJS) (collectively, the Agreements) that reflected newly available details regarding Husband's benefits and compensation.

In the MSA, the parties agreed Wife would pay Husband $850 per month as base spousal support from July 2013 through the end of 2020.[3]  According to the MSA, "[t]his spousal support award meets Husband's reasonable needs.  These needs are consistent with the standard of living established during the marriage."  On top of the $850, Wife would also pay as additional spousal support 10 percent of any earnings in a calendar year in excess of $180,000.  The parties further agreed the parties could petition the court to modify the spousal support:

> "Upon application of either party to modify or terminate support, the
> court may consider the annual incomes of each party during
> marriage and at date of separation. At date of separation, Husband
> had gross monthly income of $12,932.81 (primarily non-taxable
> income per his income and expense declaration filed on October 30,

---

[3]      The MSA provides that spousal support obligations terminate "upon the first to occur of the following:  [¶] (1) Wife's death; [¶] (2) Husband's death; [¶] (3) Husband's remarriage; [¶] (4) Husband living with an unrelated adult of either sex in other than a bonafide rental relationship; [¶] (5) January 1, 2021; [¶] or, (6) Further court order."

3

2012), and Wife had gross monthly income of $10,300 plus bonus potential (per her income and expense declaration filed on November 29, 2012). After separation and after the filing of the dissolution, Husband changed employers wherein his monthly income decreased to $7,500, and Wife changed employers wherein her monthly income increased to $15,000, plus bonus potential."

Wife also agreed to provide Husband with written notice each time she changed employment.

The PJS maintained the general structure and termination terms of spousal support obligations but modified the specific payment amounts. For July to November 2013, Wife's support was reduced to $760 per month; for December 2013, $754; for January to March 2014, $755 per month; and from April 2014 through the end of 2020, $551 per month.

B.    *Procedural Overview*

In December 2016, Wife filed a Request for Order (RFO) to modify her spousal support obligations. She had found a new job with a higher salary and contended that in light of these changed circumstances, her obligations under the Agreements exceeded the marital standard of living and would result in a windfall to Husband. Whereas in 2012 Wife's earnings included a $180,000 base salary and a potential bonus capped at 20 percent of her salary, in 2016 Wife earned $265,000 with a possible bonus of up to 40 percent of her salary. At the initial hearing the court issued an oral decision denying Wife's petition. But on the following day, it filed a minute order indicating it would reconsider its prior decision on its own motion. Several months later the court issued its Findings and Order After Hearing.

4

The court found that while Husband's expectation at the time of the agreements was to receive 10 percent of Wife's bonus of $9,900, i.e. $990, if Wife received all of her potential new bonus, Wife's additional payment would climb to $19,100. Primarily because of the significant disparity between $990 and $19,100, the court found sufficient evidence for changed circumstances. After analyzing the spousal support factors outlined in section 4320, the court maintained the base spousal support as dictated by the Agreements, and it maintained additional spousal support at 10 percent of Wife's earnings above $180,000. But the court added a new restriction, capping additional spousal support at $990 per year irrespective of Wife's actual earnings.

Husband filed Objections and Requests for Findings and Rulings relating to the court's Findings and Order After Hearing. The court declined to address the objections, and to the extent Husband sought a statement of decision consistent with Code of Civil Procedure section 632 or Rule 3.1590 of the California Rules of Court, the court denied the request as untimely.

DISCUSSION

A. *Governing Law and Applicable Legal Standards*

On appeal, an order modifying spousal support obligations is reviewed for abuse of discretion. We start with the presumption the trial court's decision was correct; the appealing party must affirmatively show error. (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1484.) " ' " 'So long as the court exercised its discretion along legal lines, its decision will not be reversed on appeal if there is substantial

5

evidence to support it.' " ' " (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 957 (*Minkin*), quoting *In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 398 (*Dietz*).)

To modify spousal support, a trial court must first find " ' "a material change of circumstances since the last order." ' " (*Minkin*, *supra*, 11 Cal.App.5th at p. 956; *Dietz*, *supra*, 176 Cal.App.4th at p. 396; see also *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 480 (*Smith*) ["Absent a change of circumstances, a motion for modification is nothing more than an impermissible collateral attack on a prior final order."].) In its changed-circumstances analysis, the court considers all factors affecting the supported spouse's needs and the supporting spouse's ability to pay. (*In re Marriage of West* (2007) 152 Cal.App.4th 240, 246.) An "increase in the supporting spouse's ability to pay" may constitute a change in circumstances. (*In re Marriage of McCann* (1996) 41 Cal.App.4th 978, 982, citing *In re Marriage of Hoffmeister* (1984) 161 Cal.App.3d 1163, 1173.) When support is governed by a marital settlement agreement or stipulated judgment, the trial court's changed-circumstances determination must " ' "give effect to the intent and reasonable expectations of the parties as expressed in the agreement." ' " (*Minkin*, *supra*, 11 Cal.App.5th at p. 957.)

Likewise, the " 'trial court's discretion to modify the spousal support order is constrained by the terms of the marital settlement agreement.' " (*Dietz*, *supra*, 176 Cal.App.4th at p. 398.) Marital settlement agreements incorporated into a dissolution judgment are interpreted under the same rules governing contract interpretation generally. (*In re Marriage of Hibbard* (2013) 212 Cal.App.4th 1007, 1012; *In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1439.) " ' "The fundamental goal of contractual

6

interpretation is to give effect to the mutual intention of the parties.  [Citation.]  If contractual language is clear and explicit, it governs." ' "  (*Hibbard*, at p. 1013.)

B.    *Substantial Evidence Supports the Trial Court's Finding of Changed Circumstances.*

Husband argues the Agreements themselves reflect the parties' reasonable expectations upon entering the agreements that an increase in Wife's salary would not constitute changed circumstances.  Specifically, he points to the fact the parties did not cap the spousal support but did include a termination date in 2020, years before spousal support obligations would ordinarily terminate after dissolution of a lengthy marriage.[4] Alternatively, Husband argues there is insufficient evidence of changed circumstances.  He contends the 2012 marital standard of living "was roughly $475,000," based on Wife's 2012 taxable income of $189,000 and Husband's income of $156,516, $151,899 of which was nontaxable.  Husband further points out that at the time of Wife's petition, he was earning $125,000, while Wife's base salary was $265,000, which is short of the marital standard of living even without accounting for inflation.

The court found changed circumstances as a result of Wife's "dramatic[]" increase in earnings.  The court noted several relevant facts regarding the relative earnings

---

[4]    Husband additionally argues the "trial court found the agreement was reasonably susceptible to Wife's interpretation and admitted extrinsic evidence that supported her view."  This argument is misplaced.  The court did not consider the ambiguity of any of the Agreement's terms, and it did not need to do so.  Likewise, the court did not improperly admit extrinsic evidence or find the agreement reasonably susceptible to any interpretation offered by Wife.  Instead, as expressly directed by the Agreements it "consider[ed] the annual incomes of each party during marriage and at date of separation."

7

increase. When she entered into the Agreements, Wife had "earned more than $180,000.00 only twice: $189,900 in 2012, and $189,717 in 2013." Under the terms of Wife's employment at that time, "[t]he maximum additional spousal support, had such bonuses been earned, could not have exceeded $3,600.00 per year." Wife's "new remuneration ($265,000.00) is $85,000.00 greater than her salary at the date of separation; additional bonuses of up to 40 percent of her new base salary could add another $106,000.00." As additional spousal support, Wife would thus be required to pay "between $8,500.00 (10% of $85,000.00) and $19,100.00 (10% of $191,000.00)."

We disagree with Husband that the Agreements demonstrate a reasonable expectation that an increase in Wife's earnings could never amount to a change in circumstances. Certainly, the trial court is required to take the Agreements into account in determining whether there are changed circumstances. (*Minkin*, *supra*, 11 Cal.App.5th at p. 957.) And the Agreements do reflect the parties' reasonable expectation that Wife's earnings would continue to increase, which we discuss below. But nothing in the Agreements compels a leap from that expectation to an understanding that an earnings increase could *never* constitute changed circumstances.

The real question is what *magnitude* of earnings increase would be necessary to create changed circumstances. On this point we are forced to conclude substantial evidence supports the trial court's finding that Wife's dramatic one-year leap in earnings constitutes a material change in circumstances such that it could consider modification of spousal support. Not only did Wife's bonus potential go from $36,000 to $106,000 in one year, but also by November 2016 records indicate she had already earned $96,152 in

8

bonus income above her $265,000 annual base salary. Thus, we can set aside the speculation regarding potential bonuses and distill the key facts for an appropriate apples-to-apples analysis as follows. In the year prior to filing her RFO, Wife's total earnings climbed from $242,252.00 in 2015 to $361,403.84 in 2016, a 49 percent increase.[5] Wife's earnings in the five years prior to the Agreements increased at an average rate of 12 percent with a standard deviation of 8.7 percent. Through a broader lens, Wife's earnings in the 10 years prior to the Agreements increased at an average rate of 11 percent with a standard deviation of 9.4 percent.[6] In that context, an increase of 49 percent in one year amounts to substantial evidence of changed circumstances.

C.   *The Court Erred When It Failed to Consider the Parties' Reasonable Expectation That Wife's Earnings Would Increase.*

Although its ability to modify a spousal support order is constrained by the terms of the marital settlement agreement (*Dietz*, *supra*, 176 Cal.App.4th at p. 398), the trial court has significant discretion when weighing the various section 4320 factors. (See, e.g., *Minkin*, *supra*, 11 Cal.App.5th at p. 957.) For the same reasons substantial evidence supported the court's changed-circumstances finding, particularly Wife's dramatic earnings increase, substantial evidence likewise supports the court's conclusion that some reduction of Wife's spousal support obligations was appropriate. However, by revising the parties' agreement to cap additional spousal support payment at "10% of Wife's

---

[5]   Because the record does not indicate Wife's earnings for December 2016, it is possible she earned more.

[6]   For convenience, these values are rounded to two significant figures.

9

income above $180,000.00 per year, up to $189,900" (i.e., the amount of Wife's earnings in 2012), the order fails to account for the parties' reasonable expectation that Wife's earnings would continue to increase. The order thus exceeds the constraints imposed by the terms of the marital settlement agreement. (See *Dietz, supra*, 176 Cal.App.4th at p. 398; *In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1476.)

The Agreements reflect the parties' reasonable expectation that Wife's earnings would continue to increase, primarily through the way the parties agreed to calculate spousal support. The MSA divides spousal support into two tiers, base "spousal support" and "additional spousal support." The tiers are distinguished in two ways. First, whereas the base spousal support is set at a specific monthly figure, the additional spousal support is determined as a percentage of the amount by which Wife's annual earnings exceed $180,000. Second, before discussing additional spousal support, the MSA asserts the base "spousal support award meets Husband's reasonable needs. These needs are consistent with "the standard of living established during the marriage." These distinctions thus evidence the expectation that while base support would be linked to Husband's reasonable needs and the marital standard of living, the additional spousal support provision—one bargained-for term among many in the expansive dissolution agreements—would allow Husband to receive a percentage of Wife's likely earnings increase, irrespective of the marital standard of living or Husband's reasonable needs. The PJS maintains the MSA's distinction between the tiers of support.

Furthermore, the parties' earnings history is expressly contemplated in the Agreements' modification provision: "the court may consider the annual incomes of each

10

party *during marriage and* at date of separation."  (Italics added.)  Later in the same paragraph, the Agreements recite, "[a]fter separation and after the filing of the dissolution . . . Wife changed employers wherein her monthly income *increased* to $15,000 plus bonus potential."  (Italics added.)  And the Agreements' provision that Wife provide notice regarding any change in employment anticipates the possibility, or perhaps likelihood, that she would again change jobs.  The inclusion of these details relating to Wife's new job and her increased earnings reinforces the parties' understanding implicit in the Agreements that her earnings would continue to increase.  As discussed above, Wife's annual earnings unmistakably show a pattern of significant increases throughout the marriage, including the five and 10-year periods before execution of the Agreements.[7]

In summary, the parties' Agreements reflected their understanding that Wife's relatively recent earnings history included a pattern of increases, averaging 11–12 percent per year.  Thus, future increases consistent with this pattern would not amount to changed circumstances sufficient to justify a modification of spousal support.  Here, however, the trial court properly found that the unusual—what it termed "dramatic[]"—increase

---

[7]     In the five years prior to the Agreements, Wife's earnings increased at an average rate of 12 percent; in the ten years prior to the Agreements, her earnings increased at an average rate of 11 percent.  (*Ante*, at pp. 9–10.)  For the period from the beginning of the marriage through execution of the Agreements, Wife's annual income grew at an average rate of 22 percent with a standard deviation of 37 percent, a dynamic earnings history with several steep increases.  If a more robust analysis were necessary, consideration of external factors such as inflation would be helpful, but for our purposes a basic analysis of total earnings amounts is sufficient to demonstrate a pattern of substantial and fairly consistent earnings increases.

11

received by Wife in 2016 *was* a changed circumstance because it fell outside the normal pattern of increases reasonably contemplated by the parties at the time of their Agreements. As a result, modification of the "additional spousal support" component of the Agreements was appropriate. In fashioning the modification, however, what the trial court failed to do was incorporate the parties' demonstrated understanding that Wife would likely receive not insignificant increases in her earnings. It thus erred in simply capping additional spousal support at pre-2016 levels.[8]

Because of its history with the parties and firsthand experience, it is for the trial court to craft a specific modification to spousal support in light of its finding of changed circumstances. But any restriction on additional spousal support should not deny Husband what the parties reasonably contemplated at the time they entered into the Agreements. For our part, we only direct that on remand the court (1) take account of the

---

[8] In light of our conclusion, we find it unnecessary to extensively discuss Husband's additional assertion of a specific factual mistake in the court's order. Indeed, both parties agree the court erred when it considered Husband's 2012 base pay to be taxable when it was in fact nontaxable, which affected the court's evaluation of the parties' standard of living at the time of dissolution, a spousal support factor the court considers under section 4320. Even so, we question the relevance of any such error. The marital standard of living factor does not compel the court to tie spousal support to a specific annual income; it merely requires the court to take into account the "general station in life enjoyed by the parties during their marriage." (*Smith*, *supra*, 225 Cal.App.3d at p. 475.) Furthermore, as discussed above, the Agreements demonstrate that base spousal support, which the court declined to modify, is the part of the spousal support award that was intended to address the parties' marital standard of living. In fact, Husband specifically agreed that the base spousal support award met his reasonable needs and was consistent with the marital standard of living. Nonetheless, we assume that to the extent the marital standard of living is relevant to its analysis, the trial court on remand will not repeat any prior error.

parties' reasonable expectation that Wife's earnings would continue to increase, and

(2) modify the spousal support obligations accordingly.[9]

DISPOSITION

The order is reversed and the matter is remanded to the superior court to modify the spousal support obligations in accordance with this opinion. Appellant is entitled to costs on appeal.

DATO, J.

WE CONCUR:

McCONNELL, P. J.

BENKE, J.

---

[9] It is a settled matter of procedure that courts of appeal "do not entertain new points raised for the first time in a reply brief absent good cause." (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1542.) On these grounds, Wife asks that we strike the portions of Husband's reply brief arguing that the trial court's section 4320 analysis amounted to prejudicial error. We decline to do so. While Wife is correct that Husband did not use the term 'prejudice' in his opening brief, failure to employ the most appropriate legal terminology is not always the basis for a motion to strike. Here, Husband's opening brief argued the general point that the trial court's section 4320 analysis was flawed and detrimental to him because it mistakenly considered his 2012 income to be taxable. Husband did not raise a new point in his reply; instead, he developed a point he discussed, albeit obliquely, in his opening brief.