Filed 2/23/21  Marriage of Jenkins CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re the Marriage of THOMAS and JOHNNIE P. JENKINS. | |
| THOMAS JENKINS, III, | D075902 |
| Respondent, | (Super. Ct. No. D516911) |
| v. | |
| JOHNNIE P. JENKINS, | |
| Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Pamela M. Parker, Judge.  Affirmed.

John Knoll for Appellant.

Kristine C. Blagof for Respondent.

Johnnie P. Jenkins appeals from findings and an order after a hearing in which the family court granted the request of Thomas Jenkins, III, for an order modifying his spousal support obligation to her.[1] As we explain, Johnnie has not met her burden of establishing that the family court abused its discretion. Accordingly, we affirm.

## I. STATEMENT OF THE CASE

Johnnie and Thomas married in December 1992, and they separated in March 2009. In a judgment filed in July 2011 (Judgment), the court dissolved the parties' marriage effective May 1, 2011. The Judgment followed the parties' stipulation that was "approved as to form and content" by Thomas, Johnnie, and Johnnie's attorney in May 2011 (Stipulation). (Some capitalization omitted.) Among other issues, the Stipulation resolved, and the Judgment ordered, spousal support. In full, based on the parties' agreement, the court ordered as follows:

> "[S]upport shall remain at $4000.00 a month family support, per the July 21, 2010, orders, but that, consistent with the parties' stipulation it shall decrease to $979.00 child support and $2303.00 spousal support upon receipt of advice that . . . ."

There are no issues relating to whether the parties received the "advice" that triggered the termination of the family support and the commencement of the separate obligations for child support and spousal support. Thus, we begin with the understanding that the parties agreed to, and the court ordered, payment of monthly spousal support from Thomas to Johnnie in the amount of $2,303.

---

[1] Johnnie and Thomas are former spouses who share the same surname. In referring to them by their first names, we do so consistent with the parties' briefing on appeal and intend no disrespect.

Almost six years later, in February 2017, Thomas filed a request for an order to modify spousal support (RFO).[2]  In the RFO, Thomas requested that the monthly support be terminated or, in the alternative, lowered from $2,303 to $1,300, explaining the basis of this request as follows:

> "Support orders [in the July 2011 Judgment] were based on maintaining the standard of living in California, and also issued a *Gavron* warning. . . .  [Thomas] has paid support . . . for a period of approximately eight (8) years, which at this point is half the length of the marriage. . . .  [M]ore than enough time has passed for [Johnnie] to become self-supporting, and she has not made any reasonable efforts to do so.  Additionally, [Johnnie] now lives in Georgia where the cost of living is approximately half compared to California.  [Johnnie] does not need the same level of support . . . in Georgia." (Italics added.)

In support of his RFO (which included a four-page Judicial Council form FL-157 spousal support declaration attachment setting forth facts under preprinted headings for each of the subdivisions of Fam. Code, former § 4320[3]), Thomas also submitted a declaration and a current income and expense declaration.[4]

---

[2]  In the RFO, Thomas also requested a vocational evaluation for Johnnie.  At the hearing on the RFO, Thomas withdrew that request, and Johnnie indicated that she "d[id]n't care about the vocational evaluation."  Following the hearing, the court ruled that Thomas had abandoned his request that Johnnie be required to submit to a vocation evaluation.

[3]  Family Code section 4320 has been amended since Thomas filed his RFO in February 2017.  (Stats. 2018, ch. 938, § 1.)  All undesignated statutory references are to the Family Code.

[4]  To the extent this, or any other, evidence affects the issues on appeal, we will set it forth as we discuss the issues at part II., *post*.

In May 2017, Johnnie filed a responsive declaration to the RFO in which she (1) consented only to a modification of spousal support "based upon the current incomes of the parties," and (2) requested an award of attorney fees and costs, which she supported by a declaration. Johnnie also submitted a memorandum of points and authorities, an additional declaration, and a current income and expense declaration.

In reply, Thomas submitted a memorandum of points and authorities.

At the hearing in June 2017, the parties did not present live testimony, relying solely on the prior written submissions and the oral argument of counsel. At the conclusion of the hearing, the court orally ruled that Thomas established the requisite change of circumstances for the court to consider a modification. The court then ruled that Thomas's monthly spousal support obligation would be reduced to $1,300 effective July 1, 2017, with a further reduction to $1,000 effective July 1, 2018.

In March 2019, the family court filed written findings and an order after hearing based on the June 2017 proceedings (FOAH). In particular, the court made the following factual findings: "[Johnnie's] decreased expenses combined with unsuccessful and insufficient efforts to become self-supporting constitute a change of circumstances"; and "Evidence supports a reduction of support to $1,000, and to reduce impact the Court finds a step-down plan appropriate." The FOAH concluded with the following order: "[S]pousal support paid from [Thomas] to [Johnnie is] reduced to $1,300 per month effective July 1, 2017. Support shall then reduce to $1,000 per month effective July 1, 2018."[5]

---

[5]  The court also granted Johnnie's request for attorney fees in the amount she sought. Thomas did not oppose Johnnie's request, and there is no issue on appeal regarding the award of fees.

Johnnie timely appealed from the FOAH.

## II. DISCUSSION

On appeal, Johnnie presents criticisms of various statements contained in the FOAH, often without suggesting how or why the criticism entitles her to relief in this appeal. We will first present certain general rules and guidelines applicable in appeals from orders modifying spousal support, and we will then consider how the statements in the FOAH to which Johnnie objects affect the ultimate rulings. In doing so, as we explain, Johnnie did not meet her burden of establishing reversible error.

A.    *Legal Principles*

1.    *General Concepts*

As a general rule, for so long as spouses are living together, they owe each other a mutual duty of support. (§ 4300 ["Subject to [§ 3500 et seq.], a person shall support the person's spouse."]; *In re Marriage of Pendleton & Fireman* (2000) 24 Cal.4th 39, 52.) A spousal support award is not mandatory in dissolution of marriage proceedings, because family courts have discretion (within statutory parameters) to deny spousal support or to limit it to an amount and duration that reflects the ability of both parties to provide for their own needs. (*Marriage of Pendleton*, at p. 52.) That said, the parties to a marriage dissolution action, like Johnnie and Thomas here, may agree to the amount and duration of spousal support by filing a stipulation with the family court in the action.[6] (See § 3590; *Marriage of Lynn, supra,* 101 Cal.App.4th at p. 130.)

---

[6]    Where, as here, the stipulation is incorporated into a judgment of dissolution of marriage, the parties' written agreement "ceases to have any independent legal significance; the parties' rights and obligations are

"Except on written agreement of the parties to the contrary or a court order terminating spousal support, the court retains jurisdiction indefinitely in a proceeding for dissolution of marriage . . . where the marriage is of long duration."  (§ 4336, subd. (a).)  The parties here do not dispute that, for purposes of section 4336 and the underlying modification proceedings, because their marriage was one "of long duration" (§ 4336, subd. (b) ["a marriage of 10 years or more" is one of long duration]), the family court had jurisdiction to consider the RFO.

Spousal support awards may be modified throughout the support period, except to the extent the parties have agreed otherwise (and except as to amounts that accrued prior to filing an application for modification).  (See §§ 3603, 3651, subds. (c)(1), (d), 4333; *In re Marriage of Hibbard* (2013) 212 Cal.App.4th 1007, 1013.)  The family court's authority to modify spousal support agreements is governed by sections 3590-3593, and section 3591 expressly authorizes modification of such agreements except to the extent the parties have agreed otherwise.

Before the family court may consider whether to modify a spousal support order, the party seeking the modification must first show a material change of circumstances since the most recent order.  (*In re Marriage of T.C. & D.C.* (2018) 30 Cal.App.5th 419, 424 (*Marriage of T.C.*).)  That is because absent a change of circumstances, a motion for modification would be nothing more than an " 'impermissible collateral attack on a prior final order.' " (*Marriage of T.C.*, at p. 424; accord, *In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1479 (*Marriage of Khera*).)  Because a material change

governed by the judgment alone."  (*In re Marriage of Lynn* (2002) 101 Cal.App.4th 120, 130 (*Marriage of Lynn*).)

of circumstances often "means a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported spouse's needs" (*In re Marriage of West* (2007) 152 Cal.App.4th 240, 246 (*Marriage of West*)), in determining the sufficiency of the supporting party's showing of a material change of circumstances, the family court "considers all factors affecting the supported spouse's needs and the supporting spouse's ability to pay" (*Marriage of T.C.*, at p. 424).

A material change of circumstances is required where, as here, the amount of spousal support under consideration for modification was established by the agreement of the parties. (*In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 396 (*Marriage of Dietz*); *In re Marriage of McCann* (1996) 41 Cal.App.4th 978, 982.) When spousal support is governed by a marital settlement agreement, the trial court's determination of changed circumstances must " ' " 'give effect to the intent and reasonable expectations of the parties as expressed in the agreement.' " ' " (*Marriage of T.C.*, *supra*, 30 Cal.App.5th at p. 424.) "Likewise, the ' "trial court's discretion to modify the spousal support order is constrained by the terms of the marital settlement agreement." ' " (*Ibid*.) Except to the extent the parties agreed to eliminate specified occurrences as a basis for modification, a change of circumstances for spousal support modification purposes includes " ' "practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties." ' " (*In re Marriage of Morrison* (1978) 20 Cal.3d 437, 454.)

Upon the requisite showing of changed circumstances, the family court then determines whether to modify the existing spousal support order by " 'consider[ing] the same criteria set forth in Family Code section 4320 as [the

7

court] considered in making the initial order.' "[7] (*Marriage of Dietz, supra,* 176 Cal.App.4th at p. 396.)

The family court has "broad discretion in deciding whether to modify a spousal support order based upon changed circumstances." (*In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 836.) In exercising this discretion, however, "a trial court must 'follow established legal principles and base its findings on substantial evidence.' " (*Ibid.*; accord, *Marriage of T.C., supra,* 30 Cal.App.5th at p. 423 [" ' " ' "So long as the court exercised its discretion along legal lines, its decision will not be reversed on appeal if there is substantial evidence to support it." ' " ' "].) Accordingly, we will review the FOAH for an abuse of discretion. (*Marriage of T.C.,* at p. 423.) In *In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481 (*Marriage of Brewster*), the court described as follows a less technical description of this standard of review: "A trial court abuses its discretion when it exceeds the 'bounds of reason' in exercising it, having considered all the circumstances before it";

---

[7]    Section 4320 currently provides: "In ordering spousal support under this part, the court shall consider all of the following circumstances: [¶] (a) . . . [¶] . . . [¶] (n) . . . ." This statute was amended to provide as it now reads after the court's oral ruling at the hearing on the RFO (June 2017) and before the FOAH was filed (Mar. 2019). (Stats. 2018, ch. 938, § 1, eff. Jan. 1, 2019.) The only change to former section 4320 was to subdivision (i), which deals with the effect of "documented evidence of any history of domestic violence" on a spousal support award. (Compare Stats. 2015, ch. 137, § 1, eff. Jan. 1, 2016, with Stats. 2018, ch. 938, § 1, eff. Jan. 1, 2019.) Domestic violence was not an issue in the Judgment, and the pleadings in support of and in opposition to the RFO do not mention domestic violence. Thus, we shall refer to current section 4320.

Section 4320 has 14 subdivisions, (a)-(n). In the text, *post*, we shall identify only those subdivisions that are necessary for the disposition of this appeal.

i.e., an exercise of discretion " 'that is "so irrational or arbitrary that no reasonable person could agree with it." ' " (*Id.* at p. 500 [spousal support].)

All intendments and presumptions are in favor of the FOAH, and Johnnie (as the appellant) has the burden of establishing reversible error. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 (*Marriage of Arceneaux*); *In re Marriage of Garcia* (2017) 13 Cal.App.5th 1334, 1344 [spousal support].) For an error to result in a reversal, with exceptions not applicable here, the appellant must also establish prejudice (Code Civ. Proc., § 475[8]) that results in a "miscarriage of justice" (Cal. Const., art. VI, § 13[9]). (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069.) A "miscarriage of justice" may be found only when the appellate court, after examining the entire cause, including the evidence, concludes that the appellant met her

---

[8]     Code of Civil Procedure section 475 provides in full: "The court must, in every stage of an action, disregard any error, improper ruling, instruction, or defect, in the pleadings or proceedings which, in the opinion of said court, does not affect the substantial rights of the parties. No judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial, and also that by reason of such error, ruling, instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed. There shall be no presumption that error is prejudicial, or that injury was done if error is shown."

[9]     Article VI, section 13, of the California Constitution provides in part: "No judgment shall be set aside . . . in any cause, on the ground of . . . the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

burden of demonstrating " 'that it is reasonably probable a result more favorable to that party would have been reached in the absence of the error.' " (*In re Marriage of Kent* (2019) 35 Cal.App.5th 487, 496; accord, *In re Marriage of Goddard* (2004) 33 Cal.4th 49, 56; *Pool,* at p. 1069; Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)

B.    *Analysis*

Johnnie describes as follows the five issues she raises on appeal: (1) "The Judgment's terms limited the discretion of the trial court"; (2) "Johnnie's capacity to maintain the marital standard of living"; (3) "The trial court failed to consider Thomas'[s] post-marital income increases"; (4) "The '*Gavron*' warning"; and (5) "The step-down and Johnnie's income prospects." (Some capitalization omitted.) We address the issues in the order Johnnie raises them in her opening brief on appeal.

1.    *The Effect of the Judgment on the Family Court's Exercise of Discretion*

Johnnie argues: "[W]hen the prior support order is rooted in the parties' stipulated judgment, the trial court's discretion to modify is constrained by the terms of the agreement; it cannot 'remake' the agreement in ways inconsistent with the parties' expectations." (Citing *Marriage of Khera, supra,* 206 Cal.App.4th at p. 1476.[10]) She contends that the following two statements in the FOAH "stray beyond those constraints":

_____

[10]    Johnnie's citation to *Marriage of Khera, supra,* 206 Cal.App.4th at page 1476, in support of the statement in the text is misleading. The actual quotation provides in full: " 'There is authority that the parties have the power to decide whether a particular event will or will not be deemed a material change of circumstances for purposes of modification of a support order.' " (*Ibid.*, quoting *Marriage of West, supra,* 152 Cal.App.4th at p. 247.) In the present case, the Stipulation does not contain an agreement as to what

- "The parties had a middle-class standard of living during the marriage" (FOAH ¶ 1.a.); and

- "The support [Johnnie] was originally awarded ($2,303 per month) was sufficient to provide her the marital standard of living" (FOAH ¶ 1.o.).

We disagree; Johnnie does not explain how either of those findings, or both together, " 'remake' " the parties' Stipulation.

Johnnie complains that the definition of " 'marital standard of living' " for purposes of paragraph 1.a. is "abstruse."[11]  Conceding that "[t]he finding of a 'middle-class standard of living' is, by itself, a harmless error," she then segues to paragraph 1.o., arguing that the finding (that the $2,303 "was sufficient to provide her the marital standard of living") is ambiguous as to time.  According to Johnnie, the ambiguity is:  whether paragraph 1.o. is a finding that *the Judgment* provides the parties agreed to monthly spousal support of $2,303 in order "to provide her the marital standard of living"; or whether, based on the RFO pleadings and evidence, paragraph 1.o. is a *current* section 4320, subdivision (d) finding "as to the needs of each party as

---

will or will not be sufficient to establish a material change of circumstances for purposes of modifying spousal support.

[11]    In the next sentence of her brief, however, Johnnie acknowledges that California law describes the "marital standard of living" as " 'the general station in life enjoyed by the parties during their marriage,' " which is "not a precise mathematical calculation."  (Citing and quoting *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475.)  The *Smith* court attributed this explanation of the "marital standard of living" to the legislative history associated with the enactment of Civil Code former section 4801, subdivision (a), the predecessor to section 4320, subdivision (a).  (*Marriage of Smith*, at p. 475.)

of the date of the Judgment."[12]  The significance of this distinction, Johnnie's argument continues, is that, at the time of the Judgment when the community had monthly income of $11,574, the parties agreed that monthly spousal support of $2,303—in addition to Johnnie's monthly self-employment income of $1,578, for a total monthly income of $3,881—"was sufficient to provide her the marital standard of living."  Johnnie's presentation then concludes:  "The court, per [*Marriage of*] *Khera*, [*supra*, 206 Cal.App.4th 1467,] is obligated to measure those recited facts against any material change of circumstance since entry of the Judgment."

Having provided no further explanation or argument, Johnnie forfeited appellate consideration of the issue.  (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 (*Marriage of Falcone*) ["The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived."]; Cal. Rules of Court, rule 8.204(a)(1)(B) [each point must be supported "by argument and, if possible, by citation of authority"].)  Stated differently, having failed to establish that the family court did not include Johnnie's prior self-employment income ($1,578) when it determined that Thomas established a material change of circumstances, Johnnie did not meet her burden of establishing reversible error.

2.  *The Marital Standard of Living*

Johnnie next challenges the following four findings of the FOAH on the basis that each is unsupported by substantial evidence:

- "[Johnnie] states she had injuries [a]ffecting [the] amount she can stand and lift with medical records that indicate orthopedic issues, but

---

[12]  Section 4320, subdivision (d) provides that, in ordering spousal support, the family court shall consider "[t]he needs of each party based on the standard of living established during the marriage."

12

there is no evidence she is incapable of working at something that would allow her to become self-supporting. Nonetheless, the Court does consider the evidence presented in making its ruling" (FOAH ¶ 1.d.);

- "[Johnnie] was a licensed daycare provider with experience related to that field and has done various administrative work, data entry, supervising work and compliance work" (FOAH ¶ 1.e.);

- "Unclear whether [Johnnie] needs further education to pursue work in [the] daycare industry. It appears from her experience that she is already trained to be a manager for a daycare provider" (FOAH ¶ 1.f.); and

- "[Johnnie] has marketable skills" (FOAH ¶ 1.g.).

More specifically, Johnnie argues that, the record lacks evidence of her "capacity to maintain the standard of living established during the marriage, taking into account her marketable skills, the job market for those skills, and her health." (Citing § 4320, subds. (a)(1), (a)(2), (h).[13])

Initially, we reject any suggestion by Johnnie that the "factual allegations in Thomas'[s] [RFO]" do not support the family court's finding that the parties had a middle-class standard of living during their marriage.

_____

[13] Section 4320, subdivision (a) provides that, in ordering spousal support, the family court shall consider: "The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following: [¶] (1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment. [¶] (2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties."

Section 4320, subdivision (h) provides that, in ordering spousal support, the family court shall consider "[t]he age and health of the parties."

13

Thomas's declaration testimony in support of the RFO (which contains *evidence*, not allegations) provides more than substantial evidence to support a finding of a middle-class standard of living.

Relying on the evidence of her health that she submitted in opposition to the RFO,[14] Johnnie argues that "[s]pousal support orders must reflect a spouse's present capabilities and employment opportunities; the court cannot anticipate what 'might' transpire in the future." (Citing *In re Marriage of Baker* (1992) 3 Cal.App.4th 491, 498 ["there was no way to accurately predict [the supported party's] future earnings because the real estate market was volatile and subject to economic factors beyond her control"].) In this regard, the FOAH reflects an informed exercise of the family court's discretion in that it: (1) expressly acknowledges Johnnie's description of her physical limitations; (2) finds Johnnie had experience providing child daycare services and "has done various administrative work, data entry, supervising work[,] and compliance work"; (3) finds Johnnie is currently "trained to be a manager for a daycare provider"; and (4) emphasizes generally that Johnnie "has marketable skills."

---

[14] The entirety of the medical evidence Johnnie submitted consisted of (1) four sentences from her declaration and (2) August 2016 "records from Resurgens Orthopaedics" that she lodged. Johnnie testified: "In November, 2015, . . . I injured my left knee. I am limited to lifting no more than 10 pounds, and cannot continuously sit, walk, or bend for over 15 minutes at a time. My left knee is still weak and if I walk or sit too long it hurts and I have to hop. . . . [¶] . . . [¶] On Sunday, July 10, 2016, . . . [an accident] injured my right knee and re-injured my left knee, leaving them in frequent pain." The record on appeal does not contain a copy of the orthopedic records, and the appellate briefing does not indicate what they state.

At the hearing on the RFO, the court expressly found that, despite the evidence Johnnie presented, "we don't know the extent of her health limitations."

Johnnie contends that these findings, in particular those related to her prior experience, are unsupported by substantial evidence because they are "conclusions without factual support" or because they "state something without specific supporting evidence" or "without providing the facts." We disagree.

First, Johnnie cites no authority (and our independent research has disclosed none) that requires a family court to identify the evidence it relies on when making factual findings. Even where a party properly requests a statement of decision (Code Civ. Proc., § 632; Cal. Rules of Court, rule 3.1590(d))—which was not done in this case—the court "is required only to set out ultimate findings rather than evidentiary ones."[15] (*Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1125.)

In any event, in his declaration in support of the RFO, Thomas testified *in detail* as to Johnnie's employment experience from 1987-2003 and her additional experience owning and operating a small business during the 2004-2012 time period. Johnnie's criticism of this evidence goes to its weight, which we do not consider in our substantial evidence review. (*Marriage of Brewster, supra*, 45 Cal.App.5th at p. 500 ["the trial court is the sole judge of the credibility and weight of the evidence"]; see *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 385 [appellate courts give deference to trial courts' factual findings "because those courts generally are in a better position to

---

[15] Contrary to the suggestion in Johnnie's reply brief, there is no indication that the family court intended the FOAH to be a statement of decision. (Cf., *In re Marriage of Rising* (1999) 76 Cal.App.4th 472, 476, fn. 7 (*Marriage of Rising*).) To the extent Johnnie is dissatisfied with the lack of details regarding what she describes as her "present capabilities and employment opportunities," she had the opportunity to request such findings in a statement of decision, but failed to do so.

evaluate and weigh the evidence"].) When reviewing the family court's factual findings for substantial evidence, "we accept as true all evidence tending to establish the correctness of the trial court's findings, resolving every conflict in the evidence in favor of the judgment [or order on appeal]." (*In re Marriage of Ankola* (2020) 53 Cal.App.5th 369, 380.) Under this standard, " '[t]he testimony of one witness, even that of a party, may constitute substantial evidence' " (*ibid*.); and "the trial court may reject evidence, even uncontradicted evidence, as unworthy of credence" (*Marriage of Brewster*, at p. 500).

In closing, Johnnie argues that "[a] vocational evaluation would have resolved the unspecific, vague allegations of what Johnnie could do to become self-supporting." Initially, we disagree with Johnnie's characterization of *the evidence* Thomas provided; his testimony contains *facts*, not "unspecific, vague allegations."[16] Regardless, Johnnie cannot fault the family court for failing to order a vocational evaluation that Thomas had originally requested. Johnnie did not file any response to this request, at the hearing on the RFO she indicated that she "d[id]n't care about the vocational evaluation," and at no time did she join in Thomas's request that she be evaluated vocationally. Accordingly, on appeal Johnnie forfeited any objection to the family court's denial of a vocational evaluation. (See *In re Marriage of Miotke* (2019) 35 Cal.App.5th 849, 861-862.) Even if we assume that Johnnie needed a

---

16 For example, after presenting testimony regarding Johnnie's skill and experience in owning and operating a licensed in-home daycare center for more than eight years, Thomas testified: "There is always a job market for well-qualified, dependable childcare providers. Care.com currently has over 350 job listing[s] in Atlanta, GA, which [is] less than a thirty-minute commute. Care.com lists 20 open positions in Fayetteville, which is a town of less than 20,000 people. There is [a] high demand in this field."

vocational evaluation to learn what she can do to become self-supporting almost seven years after the Judgment, she cannot fault the court for denying *Thomas's request* that she be evaluated.

3.  *Thomas's Post-separation Income*

Johnnie next raises issues on appeal as to the family court's finding at paragraph 1.i. of the FOAH, which provides in full: "[Thomas] has increased earnings, but it all occurred post-marriage."

First, Johnnie complains that paragraph 1.i. of the FOAH "is a ruling that as a matter of law post-marital earnings cannot be considered and the ruling is erroneous." We disagree. The statement is a *finding of fact*, not a legal ruling, and elsewhere in her briefing, Johnnie correctly describes paragraph 1.i. as a "finding." Notably, Johnnie does not contend that this finding is unsupported by substantial evidence.

Next, Johnnie criticizes a statement made by the family court at the hearing on the FOAH. According to Johnnie, the court "found that the support set in the Judgment was sufficient to meet her needs," but "that finding" is inconsistent with *Marriage of Khera, supra,* 206 Cal.App.4th 1467, because "[t]he Judgment did not address that subject." This argument fails to establish error, since a family court's "comments at oral argument may never be used to impeach [the] final order." (*In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1431; accord, *Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 1009 ["oral remarks or comments made by a trial court may not be used to attack a subsequently entered order or judgment"].)

Finally, Johnnie cites *In re Marriage of Hoffmeister* (1984) 161 Cal.App.3d 1163, 1173, for the proposition that "the supporting spouse's ability to pay spousal support may be considered a change in circumstances

17

sufficient to justify an increased spousal support award if there is a showing of need." We agree; in *Marriage of T.C.*, *supra*, 30 Cal.App.5th at page 424, we ruled, "An 'increase in the supporting spouse's ability to pay' may constitute a change in circumstances" for purposes of modifying spousal support. (Citing *Marriage of Hoffmeister*, at p. 1173.) Johnnie contends that, in this case, in determining whether Thomas met his burden of establishing a change of circumstances, the family court did not expressly disregard Thomas's post-marital income "per the bounds of *Hoffmeister*." Thus, Johnnie's contention continues, the court failed to exercise its discretion, and the failure to exercise discretion is an abuse of discretion. (Citing *In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 515 ["A trial court's failure to exercise discretion is itself an abuse of discretion"].) In this case, however, no one argued that Thomas's increase in post-marriage income was (or was not) a change of circumstances for purposes of considering whether to modify the existing support order contained in the Judgment; nor would Thomas have advanced his *increased* income as a change of circumstance that would justify a *downward* modification of his support obligation to Johnnie. Here, consistent with Thomas's RFO, the family court ruled that the changes of circumstances sufficient to consider whether to effect a modification were: "[Johnnie's] decreased expenses combined with unsuccessful and insufficient efforts to become self-supporting."

      4.    *The* Gavron *Warning*

In *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705 (*Marriage of Gavron*), the court held that, without a "reasonable advance warning that after an appropriate period of time the supported spouse was expected to become self-sufficient or face onerous legal and financial consequences," failure of the supported spouse to become self-supporting cannot be a

"changed circumstance" sufficient to consider a modification of support. (*Id.* at p. 712.) "Thus, what has become known as a '*Gavron* warning' is a fair warning to the supported spouse he or she is expected to become self-supporting." (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 55.)

Years later, the Legislature codified the *Gavron* warning; and at the time of the July 2011 Judgment here, former section 4330, subdivision (b) gave the family court the discretion to include it in an order for spousal support.[17] The court exercised this discretion in the present case. The Judgment—which was "approved as to form and content" by both Johnnie and her attorney (capitalization omitted)—provides at paragraph 4.n.(1) that the parties *stipulated* to the spousal support awarded and contains the following order:

> "**NOTICE:** It is the goal of this state that each party will make reasonable good faith efforts to become self-supporting as provided for in Family Code section 4320. *The failure to make reasonable good faith efforts may be one of the factors considered by the court as a basis for modifying or terminating spousal or partner support.*"
> (Italics added.)

In this appeal, Johnnie raises issues concerning the above-quoted *Gavron* warning.

---

[17] At the time of the parties' July 2011 Judgment, former section 4330, subdivision (b) provided: "When making an order for spousal support, the court may advise the recipient of support that he or she should make reasonable efforts to assist in providing for his or her support needs, taking into account the particular circumstances considered by the court pursuant to Section 4320, unless, in the case of a marriage of long duration as provided for in Section 4336, the court decides this warning is inadvisable." (Stats. 1999, ch. 846, § 2.)

In her opening brief on appeal, Johnnie directs us to three paragraphs of the FOAH which, she contends, "revolve around the effect of the alleged '*Gavron*' warning in the Judgment." They include:

- "[Johnnie's] expenses decreased since moving to Georgia" (FOAH ¶ 1.k.);

- "[Johnnie's] decreased expenses combined with unsuccessful and insufficient efforts to become self-supporting constitute a change of circumstances" (FOAH ¶ 1.*l*.); and

- "[The] *Gavron* warning on page 2 of [the] Judgment . . . cannot be dismissed—it is an instruction and an expectation" (FOAH ¶ 1.q.).

Nonetheless, Johnnie presents no arguments or contentions that these (or other) findings lack substantial evidence or contain an error of law.

Contrary to Thomas's argument at the hearing on the FOAH,[18] on appeal Johnnie first contends, "It is factually impossible that Thomas relied upon the *Gavron* warning when spousal support was set" in the July 2011 Judgment. For a number of independent reasons, this contention does not help Johnnie.

Initially, Johnnie forfeited appellate review of the issue. The factual premise for her conclusion regarding factual impossibility includes a sequence of events during the July 2010 – July 2011 time period that resulted in the Stipulation and the Judgment. However, Johnnie *provides no evidence or record references* to support the events that comprise this premise. Where, as here, " 'a party fails to support an argument with the necessary

_____

18    Johnnie does not cite the specific language on which she relies. We note that, at the hearing, Thomas's attorney argued: "[Thomas] came into that marital settlement agreement with the condition of a *Gavron* warning, with the condition that [Johnnie] would do everything in her power to become self-supporting. [Thomas ha]s held up his end of the bargain. He wants her to hold up her end of the bargain."

citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived.' " (*Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 28 [appeal from child support order]; accord, *Herriott v. Herriott* (2019) 33 Cal.App.5th 212, 222, fn. 15 [appeal from family court's domestic violence restraining order between former spouses: appellate courts "may disregard statements not supported by proper" record references]; Cal. Rules of Court, rule 8.204(a)(2)(C) [an appellant "must" limit the summary of facts "to matters in the record"].)

In any event, Johnnie does not explain how, if at all, *Thomas's* reliance (or the factual impossibility for *him* to rely) on the *Gavron* warning affected any ruling made by the court.

Further, even if we reached the merits, the result would be no different. In part, that is because the argument of counsel (here, Thomas's trial attorney (see fn. 18, *ante*) is not evidence. (*In re Zeth S.* (2003) 31 Cal.4th 396, 413, fn. 11 ["the unsworn statements of counsel are not evidence"].) In short, there is no indication that the trial court relied on counsel's argument in reaching its ruling.

Johnnie next complains that "there is no evidence Johnnie received the [*Gavron*] warning." Although not expressly asserted by Johnnie, we assume that her corresponding legal argument is that, before spousal support may be reduced (or terminated) based on an unsuccessful or insufficient effort to become self-supporting, the supported party must be given fair notice of a *Gavron* warning. (See *Marriage of Gavron, supra,* 203 Cal.App.3d at p. 712 ["Inherent in the concept that the supported spouse's failure to at least make good-faith efforts to become self-sufficient can constitute a change in circumstances which could warrant a modification in spousal support is the premise that the supported spouse be made aware of the obligation to become

21

self-supporting"]; *In re Marriage of Heistermann* (1991) 234 Cal.App.3d 1195, 1204 ["absent provisions in the original support order designed to direct the spouse toward becoming self-supporting, an unemployed spouse should not be penalized years later for a failure to become employed"].)

We are not persuaded that a lack of notice applies in this case. " 'The rule is well established that a reviewing court must presume that the record contains evidence to support every finding of fact[.]' " (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887 (*Marriage of Fink*) [division of property].) Based on (1) this presumption, (2) Johnnie's failure to deny that she received a *Gavron* warning,[19] and the uncontradicted evidence both that (3) the Judgment contains a *Gavron* warning and (4) Johnnie approved the Judgment as to form *and content*,[20] we have no difficulty concluding that Johnnie did not

_____

[19] At oral argument, Johnnie suggested that Thomas had the burden of showing she received the *Gavron* warning for purposes of notice; i.e., she did not have the burden to establish a lack of knowledge of the *Gavron* warning. We express no opinion on this issue, since the record contains substantial evidence to support the family court's implied finding that Johnnie "approved as to form and content" the *Gavron* warning contained on the preprinted portion of paragraph 4.n. of the Judgment. (See fn. 20, *post*.)

[20] At oral argument, Johnnie argued that the record contains no evidence that she ever received a *Gavron* warning, since—according to her attorney— at the July 21, 2010 hearing at which the parties stipulated to various terms on the record, the parties did not discuss, and the family court did not direct, a *Gavron* order. The *Gavron* order, according to Johnnie, was included in the Judgment *only* because it is preprinted on the court form used; and there is no indication that Johnnie ever saw the Judgment (with the *Gavron* order), as opposed to merely the Stipulation. We reject this argument for at least two independent reasons.

First, we conclude that, by her "approv[al]" of the Stipulation, she also "approved as to form and content" paragraph 4.n. of the Judgment. That is because, as part of the presumption of correctness that attaches to the FOAH,

meet her burden of establishing error related to her awareness of the obligation in the Judgment that she become self-supporting.

In closing, Johnnie suggests that "[i]t is problematic that a Judicial Counsel [*sic*] form could override a discretionary warning and in effect make it mandatory." According to Johnnie, section 4330, subdivision (b) provides that the court has the discretion to give a *Gavron* warning (see fn. 17, *ante*), whereas the Judicial Council form FL-180 used for the Judgment in this case contains the above-quoted *Gavron* warning as a preprinted statement at paragraph 4.n. of the form.[21] By failing to present any legal argument or authority, however, Johnnie forfeited appellate review of what she contends

_____

on appellate review, " ' "any conflict in the evidence or reasonable inferences to be drawn from the facts[—here, whether Johnnie's approval included paragraph 4.n. of the Judgment—]will be resolved in support of the [FOAH]." ' " (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 94.)

Second, on the present record we *must* presume that, at the July 2010 hearing, Johnnie was given a *Gavron* warning. Because Johnnie (as the appellant) "has the burden of showing reversible error by an adequate record" (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574), " ' "if the record is inadequate for meaningful review, [Johnnie] defaults and the decision of the trial court should be affirmed" ' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609). Without a reporter's transcript of the July 2010 proceedings, "the [J]udgment must be conclusively presumed correct as to all evidentiary matters," which requires us to "presume[ ] that the unreported . . . [proceedings] would demonstrate *the absence of error*." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992, italics omitted & added.) In short, Johnnie's " '[f]ailure to provide an adequate record on [the] issue requires that the issue be resolved against [her]' " (*Jameson*, at p. 609).

[21] In her opening brief, Johnnie asks us to take judicial notice of "the current iteration of form FL-180, revised as of July 1, 2012," which replaced the form FL-180 (rev. Jan. 1, 2007) used for the July 2011 Judgment in this case. We deny the request. Johnnie failed (1) to file a separate motion, as required by California Rules of Court, rule 8.252(a), and (2) to provide a copy of the document she asks us to judicially notice.

is "problematic." (*Marriage of Falcone, supra*, 164 Cal.App.4th at p. 830; Cal. Rules of Court, rule 8.204(a)(1)(B).) Further, Johnnie waived the specific objection she raises now, since almost 10 years ago she expressly approved both the form and content of the Judgment—which includes the *Gavron* warning.

5. *The Amount of Spousal Support*

Johnnie's final argument on appeal is that the family court erred in setting the amount of monthly spousal support—i.e., a reduction from $2,303 to $1,300 effective July 1, 2017, with a further reduction to $1,000 effective July 1, 2018.

Johnnie first argues "that an automatic step down of support is an abuse of discretion unless there is evidence in the record that the supported spouse will have a decreased need for support at the time of each scheduled step-down." (Citing *In re Marriage of Prietsch & Calhoun* (1987) 190 Cal.App.3d 645, 656 (*Marriage of Prietsch*).) Johnnie overstates what the *Marriage of Prietsch* court ruled.

In distinguishing *Marriage of Prietsch, supra*, 190 Cal.App.3d 645, a different division of the same appellate district explained that not every case in which the family court orders a step-down in support requires evidence that the supported spouse will have decreased needs in the future. (*Marriage of Rising, supra*, 76 Cal.App.4th at p. 477.) To the contrary, where, as here, the supporting spouse seeks a *downward modification of an existing award*, "we do not believe it is critical that there be evidence showing the supported spouse's needs will decrease on each step-down date." (*Id*. at p. 478.) That is because the requirement for "evidence of decreased need to support an automatic step-down" is limited to the situations "where the court's primary order is *initially setting* or *later increasing* support payments." (*Id*. at

24

pp. 477-478, italics added; compare *ibid.* with *Marriage of Prietsch*, at pp. 655-656 [the change of circumstances justified *increasing* the spousal support].) As stated in *Marriage of Rising* and applicable in the present appeal, a downward modification of an existing spousal support award "is proper if, at the time of making the order, the court had discretion to decrease support to the ultimate step-down level . . . and the court states that it is implementing the step-down to ease the impact of the decrease on the supported spouse." (*Id.* at p. 478, italics omitted.) To this end, at paragraph 1.r. of the FOAH, the family court expressly ruled: "Evidence supports a reduction of support to $1,000, and to reduce impact the Court finds a step-down plan appropriate." Johnnie does not suggest that either of these rulings exceeds the bounds of reason or is so irrational or arbitrary that no reasonable person could agree with either of them.

Instead, Johnnie directs her attention to the following paragraphs of the FOAH, which she contends are "in question":

- "[Johnnie] has the ability to be self-supporting within the next two years, which should substantially replace her need for support" (FOAH, ¶ 1.s.); and

- "[Johnnie] should be earning close to $3,000 by now. That was the expectation, [but] she is not" (FOAH, ¶ 1.v.).

The entirety of her argument as to these findings is: "The $3,000.00 appears ex nihilo. The record is devoid [(1)] of evidence that Johnnie ever made anything over the $1,578.00 assigned her or [(2)] of proof that any position is available to her whereby she could make such a level of income . . . [¶] . . . [or (3) of evidence of] positions that would make her self-supporting (a vocational evaluation would have cured that problem)." Once again, however, because Johnnie's presentation lacks "cogent legal argument or citation to authority," Johnnie has forfeited appellate review of the issues she raises with regard to

25

paragraphs 1.s. and 1.v. of the FOAH. (*Marriage of Falcone, supra*, 164 Cal.App.4th at p. 830; see Cal. Rules of Court, rule 8.204(a)(1)(B).)

In any event, to the extent Johnnie attempts to raise a substantial evidence argument as to the findings at paragraphs 1.s. and 1.v. of the FOAH, she further forfeited it by not including " 'in h[er] brief a summary of the material evidence upon that issue. Unless this is done, the error assigned is deemed to be waived. . . . It is incumbent upon appellants to state fully, with transcript references, the evidence which is claimed to be insufficient to support the findings.' " (*Marriage of Fink, supra*, 25 Cal.3d at p. 887.) Johnnie did not do this here.

Finally, to the extent she complains that Thomas did not establish the existence of a specific job earning a specific income, Johnnie presents no legal authority requiring such a showing, and our independent research has disclosed none under facts similar to those here. We are again not persuaded by Johnnie's repeated suggestion of legal error in failing to order a vocational evaluation. Neither Thomas nor the family court was required to find employment for Johnnie. The burden was on Johnnie to demonstrate a reasonable good faith effort to become self-supporting, and the family court expressly found that her efforts in this regard were both "unsuccessful and insufficient."

## III. DISPOSITION

The March 18, 2019 FOAH is affirmed.  Thomas is entitled to his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)


IRION, J.

WE CONCUR:


BENKE, Acting P. J.


O'ROURKE, J.