Filed 2/3/22  Marriage of Ochner CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

In re the Marriage of CYNTHIA and JAMES OCHNER.

CYNTHIA OCHNER,

 Respondent,

v.

JAMES OCHNER,

 Appellant.

E075272

(Super.Ct.No. SWD1301643)

OPINION

APPEAL from the Superior Court of Riverside County.  Timothy F. Freer, Judge.

Affirmed in part; reversed in part.

Holstrom, Block & Parke and Ronald B. Funk for Appellant.

La Quinta Law Group and Timothy L. Ewanyshyn for Respondent.

James Ochner appeals from a family court order, which denied in part and granted

in part his petition for modification of spousal support and granted Cynthia Ochner's

request for order (RFO) seeking attorney fees and reimbursement for tax payments and

1

medical expenses. James[1] contends the court erred in its analysis of the factors set forth in Family Code[2] section 4320, failed to "address the threshold issue of whether there was a material change of circumstances," failed to apply the rebuttable presumption of a reduced need for spousal support given Cynthia's cohabitation with her boyfriend, and erred in ordering James to pay Cynthia's attorney fees and to reimburse her for 2011 and 2013 taxes. We agree the court erred in ordering James to reimburse Cynthia for 2011 and 2013 taxes. Otherwise, we affirm.

## I.  PROCEDURAL BACKGROUND AND FACTS

Cynthia and James were married for 18 and a half years; both worked outside the home during their marriage, but Cynthia only worked part-time. They separated in 2013 and dissolved their marriage in 2014, according to the terms of a marital settlement agreement (MSA) incorporated into the court's judgment on March 24, 2014.

According to the MSA, the marital standard of living included a family budget of $13,000 a month and yearly vacations via employer sponsored trips and personal payment trips. Thus, James agreed to pay Cynthia $5,000 a month ($2,700 in spousal support and $2,300 in child support).[3]  In the MSA, "[t]he spousal support payments . . .

---

[1]  For convenience and clarity, we refer to the parties by their first names. We mean no disrespect. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 817, fn. 1.)

[2]  All further statutory references are to the Family Code unless otherwise stated.

[3]  At the date of separation, James earned "approximately $149,000 per year," and Cynthia earned "approximately $36,000 per year."

cease to be due on the earliest of the death of Husband, the death of Wife, and the remarriage of Wife. Spousal support shall NOT terminate upon the cohabitation by Wife with another person or Wife's entry into a registered domestic partnership under California law, or the equivalent under the law of any other jurisdiction." James was entitled to deduct spousal support payments on his taxes, but Cynthia was required to include them as income. The parties agreed that a joint tax return could not be filed in 2014, and they would file individual tax returns in 2013 and report one-half of any community property income prior to the separation date. In the event of an audit of their joint tax returns, they agreed that "[i]f a deficiency is to be paid, or a refund to be received, the tax liability of both Parties shall be paid by Husband, together with any interest, penalties, and expenses incurred (including professional fees) . . . . Husband shall receive any refunds arising from joint federal or state tax returns, after paying any professional fees and costs incurred in obtaining the refund."

The MSA provides for a modification of spousal support, "except as to any amounts that are in arrears prior to the date of the filing of a Motion or Order to Show Cause to modify the support." Thus, on December 28, 2017, James requested an order ending his obligation to pay spousal support on the grounds he was unemployed as of December 11, 2017, and Cynthia had established a domestic partnership.[4] Prior to being unemployed, James earned an average monthly income of $38,754. In response to

---

[4] He also requested to lower the amount of his child support payments; however, he withdrew this request when the youngest child reached the age of 18 years prior to the family court's ruling.

James' request, Cynthia accused him of lying about being unemployed. Referencing postings on the Internet, she asserted that he was managing partner of Coachella Valley Volkswagen, owned two Harley Davidson motorcycles, a large recreational vehicle, and a Jaguar, and that he took long vacations with his second wife. Cynthia filed an RFO seeking (1) reimbursement of $17,663.45 for tax debt, which she asserted James was required to pay but was garnished from her wages, (2) $2,500 for the cost of their youngest child's orthodontics, (3) sanctions of $1,500 for failing to comply with the judgment, and (4) $5,568 for interest owed on the taxes. She also requested attorney fees in the amounts of $900 (balance owed according to the judgment) and $3,500 (current attorney fee expense).

Prior to the evidentiary hearing on the parties' motions, they submitted several documents in support of their claims. According to James' June 8, 2018 rebuttal declaration, he was unemployed for three weeks in December 2017 and seven weeks in March and April 2018. Otherwise, his income was anywhere from $8,000 to $13,454 a month. According to another declaration he filed on August 2, 2018, he stated that he and Cynthia had filed a joint tax return in 2011 but filed separately thereafter. He noted that the Internal Revenue Service (IRS) documents, which Cynthia provided, showed that the 2011 overpayment of $15,000 was applied to her 2012 tax liability. To the extent her 2012 and 2013 overpayments were used to pay for the 2011 community tax liability, James acknowledged his responsibility to reimburse her; however, she was not entitled to the $15,000 overpayment, which was applied to pay her 2012 taxes. Regarding his share of their children's medical expenses, James noted that the receipts Cynthia had attached

4

to her RFO only added up to $2,506.89, of which he was responsible for one-half ($1,253.45). Regarding past due attorney fees, James believed he had paid what he was ordered to pay, but he never received an invoice from Cynthia's attorney. Finally, James asserted that Cynthia was "co-habitating with her current boyfriend" in his home.

In James' income and expense declaration filed November 21, 2018, he declared that he was making $10,000 a month. In Cynthia's income and expense declaration filed November 30, 2018, she claimed that she became unemployed on October 4, 2018, and that James was in arrears on his spousal support payments.

The evidentiary hearing began on December 19, 2018. Cynthia testified that everything stated in her November 30, 2018 income and expense declaration was accurate and truthful. She confirmed that the judgment of dissolution accurately identified their marital standard of living. She testified regarding the various social media posts that confirmed James' employment, his travels, and his current lifestyle with his second wife. Regarding her payment of James' $17,663.45 tax debt, Cynthia believed the sum was accurate and owed to her. She testified that she was diagnosed with Hashimoto's disease and rheumatoid arthritis. She stated that she had not received any spousal support for the last four months of 2018. The family court ordered James to pay Cynthia's attorney fees in the amount of $4,400 ($3,500 plus $900 past due).

During cross-examination, Cynthia confirmed that the parties filed separate tax returns in 2012. The family court noted that the IRS's March 17, 2014 letter states that Cynthia's overpayment of $2,071 was applied to taxes owed in 2011. James pointed out that the $15,000 refund in 2011 was used to pay Cynthia's 2012 taxes. James questioned

5

Cynthia concerning her plan to move to Idaho to live with her boyfriend in his home. The court admitted the parties' 2013 and 2017 tax returns, along with IRS letters to Cynthia regarding the application of any overpayment of taxes for the years 2011 through 2013, inclusive.[5] The hearing concluded for the day, and the matter was continued, pending settlement discussions between the parties.

Returning to court on December 6, 2019, Cynthia testified that she was residing with her boyfriend in Idaho, and that her monthly expenses included $700 for rent, along with utilities and her personal expenses. She stated that she takes care of herself and does not share "information or expenses" with her boyfriend "because of [her] previous situation with [her] ex-husband." She again described her prior marital standard of living, setting their spending at $10,000 to $12,000 a month. She acknowledged that James told her that he had been ordered to pay attorney fees and approximately $3,000 for monthly spousal support in connection with the dissolution case involving his second wife.

---

[5] These documents include:

Exhibit 1—IRS letter (Mar. 17, 2014), stating 2012 overpayment of $2,071 applied to 2011 tax return;

Exhibit 2—IRS letter (Mar. 31, 2014), stating 2013 overpayment of $592.45 applied to 2011 tax return;

Exhibit 3—IRS letter (June 15, 2015), stating 2011 overpayment of $15,000 applied to 2012 tax return;

Exhibit 4—Cynthia's 2013 income tax return;

Exhibit 5—James' 2013 income tax return;

Exhibit 6—Cynthia's 2017 income tax return; and

Exhibit 7—James' 2017 income tax return.

James testified regarding his employment history and other sources of income. He worked as a general manager at Ken Garff Automotive Group until May 2014, an Internet director at AutoNation Toyota Buena Park from June through September 2014, and as a general manager at I-10 Toyota from September 2014 through December 2017. His gross income for 2017 was "$450,000-ish." In January 2018, James started his own management company called Hi-Ochtane Imports, Inc. That same month Hi-Ochtane entered into a partnership with Coachella Valley Volkswagen, which ended in March 2018. From mid-April to mid-May 2018, Nissani Brothers Hyundai in Culver City paid James $10,000 a month plus commission. In mid-May 2018, Nissani Brothers contracted with Hi-Ochtane, paying Hi-Ochtane $20,000 a month, and James became their general manager until July 2018. Hi-Ochtane paid James a monthly salary of $8,000. Hi-Ochtane had two members, James and his second wife. From October 2018 to January 2019, he was general manager for Keyes Hyundai in Mission Hills. In January 2019, he became general manager of Honda of Santa Monica, earning $25,000 a month, except for one month when he was paid $15,000, and his gross salary for 2019 was "$160,000-ish."

James described his marital standard of living with Cynthia as "middle to upper class." He admitted being $10,000 in arrears on spousal support as of January 2019. He testified that he should not have to pay further spousal support because his "capacity was reduced and her needs have been reduced" given her cohabitation with a significant other. Regarding his current health condition, James stated that he had been placed on disability, effective August 5th or 6th, and had been prescribed Prozac. He testified that he had not worked since July 31, 2019, and was receiving temporary disability income of

$1,254 a week. Unless he was put on permanent disability, these payments would end after one year. James' second wife petitioned for dissolution of marriage in April 2019, and he had been ordered to pay her temporary spousal support of $3,000 a month, plus $7,500 in attorney fees she had incurred. He had leased an Aston Martin Vantage in March 2019 for $1,763 a month, with the plan to sublease it for $369 a day. Given his current financial situation, he explained that he obtained a two-month deferral on the lease payments because the car had been out of commission due to an accident, and he was negotiating with a company to take over the lease. James agreed that he had yet to pay Cynthia's attorney fees, which were ordered by the court, and he was $41,000 in arrears on his spousal support.

After all evidence was presented, on February 28, 2020, the parties submitted written and oral closing arguments.[6] James' written argument was submitted in the form of a declaration. According to his declaration, beginning January 24, 2020, he was employed at Selma Honda as general manager with a base monthly salary of $8,000. He also earned monthly commissions of eight percent of the net profit and quarterly bonuses of two percent of the net, both based on Selma's financial statement, along with other competitor, district, gross, and yearly bonuses.

After taking the matter under submission, the family court issued its statement of decision on April 27, 2020, wherein it ordered James to pay Cynthia $21,500 in attorney fees, $4,840 for reimbursement of child support, and $17,609.45 for 2011 and 2013 taxes.

---

[6] Cynthia's written closing argument is not included in the record on appeal; however, the family court summarized her argument in its statement of decision.

8

The court continued spousal support in the amount of $2,700 a month; however, it agreed to modify it to $1,250 a month once James paid "any and all outstanding attorney fees consistent with this order," "all child support costs consistent with this order," and "all taxes for 2011 and 2013 consistent with this order," and when "[a]ny Spousal Support arrears have been reduced to zero."

## II. DISCUSSION

James contends the family court erred in denying his request for modification while conditionally granting it upon satisfaction of certain, nonstatutory conditions. More specifically, he faults the court for failing (1) to adequately analyze the spousal support factors, (2) to rule as to whether there was a change of circumstances, and (3) to consider Cynthia's cohabitation as a factor in support of his request to modify his spousal support. He further contends that "because the court erred in its analysis of the" section 4320 factors, "its attorney fee award is similarly erroneous." Finally, he argues there is insufficient evidence to support the order that he reimburse her for any 2011 and 2013 tax liability.

*A. Governing Law and Applicable Legal Standards.*

"On appeal, an order modifying spousal support obligations is reviewed for abuse of discretion. We start with the presumption the trial court's decision was correct; the appealing party must affirmatively show error. [Citation.] "'"'So long as the court exercised its discretion along legal lines, its decision will not be reversed on appeal if there is substantial evidence to support it."'"' [Citations.] [¶] To modify spousal support, a trial court must first find "'"a material change of circumstances since the last

order.'"' [Citations.] In its changed-circumstances analysis, the court considers all factors affecting the supported spouse's needs and the supporting spouse's ability to pay. [Citation.] . . . When support is governed by a marital settlement agreement . . . , the trial court's changed-circumstances determination must '"'give effect to the intent and reasonable expectations of the parties as expressed in the agreement.'"' [Citations.] [¶] Likewise, the '"'trial court's discretion to modify the spousal support order is constrained by the terms of the marital settlement agreement."' [Citation.] Marital settlement agreements incorporated into a dissolution judgment are interpreted under the same rules governing contract interpretation generally. [Citations.] '"'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. [Citation.] If contractual language is clear and explicit, it governs.'"'" (*In re Marriage of T.C. & D.C.* (2018) 30 Cal.App.5th 419, 423-424.)

B. *Section 4320 Factors.*

We begin by considering whether the family court failed to analyze the section 4320 factors, the circumstances of the parties postdissolution, and Cynthia's cohabitation with her boyfriend.

Section 4320 sets forth the factors a court must consider in determining spousal support, as well as a subsequent request to modify such support. (*In re Marriage of West* (2007) 152 Cal.App.4th 240, 247.) "[T]he marital standard of living[] is relevant as a reference point against which the other statutory factors are to be weighed. [Citations.] The other statutory factors include: contributions to the supporting spouse's education, training, or career; the supporting spouse's ability to pay; the needs of each party, based

10

on the marital standard of living; the obligations and assets of each party; the duration of the marriage; the opportunity for employment without undue interference with the children's interests; the age and health of the parties; tax consequences; the balance of hardships to the parties; the goal that the supported party be self-supporting within a reasonable period of time; and any other factors deemed just and equitable by the court." (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 303-304; see § 4320.)

According to James, because the family court did not "detail the factual findings underlying" the section 4320 factors, it failed to analyze each one. Not so. The court's statement of decision specifically summarized Cynthia's closing argument, which identified and evaluated each factor and noted that James did not do so in his declaration. Rather, the court observed that James apparently "believe[d that] 'Cohabitation' will trump all other factors listed in Family Code [section] 4320." The court then "considered all Factors listed in Family Code 4320 et seq.," and found the following: (1) there was a long-term marriage (18 years four months) (§ 4320, subd. (f)); (2) this was a postjudgment modification request; (3) the parties enjoyed a middle to upper middle class lifestyle while married (§ 4320, subds. (a), (d)); (4) there was no evidence of domestic violence or criminal convictions (§ 4320, subds. (i), (m)); (5) James has the ability to pay spousal support as ordered in the judgment (§ 4320, subd. (c)); (6) both parties suffer from medical ailments, which do not affect their ability to seek and maintain employment (§ 4320, subd. (h)); (7) the tax consequences for a spousal support award for Cynthia would work to the disadvantage of James (§ 4320, subd. (j)); (8) Cynthia had primary physical custody of the children and is relatively new to the work force since she is less

11

than two years removed from the youngest child turning 18 years of age (§ 4320, subds. (a)(2), (g)); and (9) Cynthia has been in a long-term relationship, cohabiting, with another individual.

Based on this record, it is clear the family court considered all the section 4320 factors. Although it did not cite and discuss each factor set forth in section 4320, it expressly discussed many of them, including other factors such as Cynthia's move to another state and her engagement in a relationship that "presumably benefit[s her] financially," and James' failure to explain his "complete and utter non-compliance" with the court's prior orders requiring his payment of spousal support and attorney fees. (§ 4320, subd. (n).) To the extent any factor or factors were not specifically identified, we conclude the court implicitly considered them in deciding to "[g]rant[] in part and den[y] in part" James' request to modify his spousal support.[7]

Next, James faults the family court for (1) failing to "make a threshold finding of whether there were changed circumstances justifying a modification of support, instead seeming to focus on whether James had 'unclean hands,'" and (2) failing to consider Cynthia's cohabitation as a factor in support of the request to modify his spousal support.

According to its statement of decision, the court acknowledged and considered Cynthia's move to another state, with an individual with whom she was in a relationship with, as a changed circumstance. The court stated that it "cannot overlook the financial

---

[7] Having found no error in the family court's analysis of the section 4320 factors, James' challenge to the award of attorney fees, based solely on a conclusion the court "erred in its analysis of" the section 4320 factors, also fails.

12

benefits from romantic partners as they pool their resources and assets for a 'better life.'"

However, "'a showing of changed circumstances does not necessarily mandate a

modification of spousal support.'" (*In re Marriage of Khera & Sameer* (2012) 206

Cal.App.4th 1467, 1484.)

As previously identified, section 4320 lists the factors a lower court must consider.

Here, the court acknowledged that Cynthia's "cohabitation" "is not the *sole* factor, and in

this case, will not be dispositive in and of itself for a ruling with respect to modifying

Spousal Support." Rather, the dispositive factor was James' unclean hands, specifically,

his failure to pay spousal support ($41,000 in arrears) despite his significant income (no

less than $8,000 and as high as $16,000 a month), and his attempt to hide his income by

not disclosing it.

The court found James' portrayal of himself as a "broken man, now on disability,

living at home" to be less than credible, and refused to reward him with an order granting

his petition given his acts of bad faith and failure to fulfill the "obligations of his

Judgment with efficiency and consistency." We find no fault in the family court's

findings and decision. (*In re Marriage of Berman* (2017) 15 Cal.App.5th 914, 920 ["The

trial court has broad discretion in setting or modifying spousal support, and among other

things may take into account evidence of bad faith on the part of the supporting party in

meeting his or her support obligations. Such evidence may justify holding a supporting

party to those obligations even if the acts taken in bad faith have ostensibly reduced the

supporting party's income."].) Moreover, the family court could consider James' unclean

hands in deciding to conditionally grant modification of spousal support upon payment of

the amount in arrears because it was a "current fact[] and circumstance[]," which existed at the time the order was made. (*In re Marriage of Tydlaska* (2003) 114 Cal.App.4th 572, 575 ["'[A] modification order must be based on current facts and circumstances.'"]

*C. Order to Reimburse Cynthia for 2011 and 2013 Taxes.*

Finally, James argues there is insufficient evidence to support the order that he was responsible for the monies that the IRS retained to pay taxes owed in 2011 and 2013. We agree.

According to the MSA, Cynthia agreed that James would pay any tax liability for, and receive any refunds from, their joint federal and state tax returns. At trial, she confirmed the last year that the parties filed a joint tax return was 2011. The trial court therefore erred by ordering James to pay Cynthia $17,609.45 that was meant to reflect his obligation to pay the couples' tax liability. Most of the amount ordered was to repay a refund of a $15,000 overpayment on the couples' 2011 taxes, but that amount never went to James but instead was applied by the IRS to Cynthia's separate tax liability in 2012. James did not owe the amount, as it went to Cynthia separately. The remaining $2,609.45 of the amount ordered was meant to compensate Cynthia for an amount taken from her 2012 refund to pay the couples' tax deficiency, but it was not proper to order James to reimburse that amount, where in the same tax return Cynthia received the $15,000 overpayment from the couples' 2011 taxes, a windfall well in excess of the amount taken for the deficiency.

14

## III.  DISPOSITION

The family court's April 27, 2020 order directing James to pay Cynthia $17,609.45 for 2011 and 2013 taxes is reversed.  In all other respects, the order is affirmed.  Each party to bear their own costs.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

J.

We concur:

RAMIREZ

P. J.

RAPHAEL

J.

15