Filed 8/22/24  Marriage of Ruelas and Asensio CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of ELISA RUELAS and ALFREDO ASENSIO. | D082840 |
| ELISA RUELAS, | |
| Respondent, | (Super. Ct. No. DS56114) |
| v. | |
| ALFREDO ASENSIO, | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Leonard N. Trinh, Judge.  Affirmed.

Law Office of Philip H. Dyson and Philip H. Dyson for Appellant.

No appearance for Respondent.

Appellant Alfredo Asensio appeals from a family court order on his request to enforce a judgment incorporating a marital settlement agreement (at times, the agreement) he and his former spouse, respondent Elisa

Ruelas,[1] entered into in connection with the dissolution of their marriage. The marital settlement agreement requires, among other things, Asensio to have exclusive possession of certain real property to use as his personal residence, and for Ruelas to make monthly payments to Asensio "calculated at the rate of 1.5 [percent] of $350,000, or that sum reduced by any lump sum payment . . . which he has received, and payment made monthly."  The marital settlement agreement contains a parenthetical example of that calculation, stating:  "For instance, the first payment to [Asensio] will be $345,000 X .015 ÷ 12 =$431.25[.]"  Asensio contends the family court erred by its interpretation of this provision of the marital settlement agreement, and abused its discretion by denying him "full reasonable relief" in the form of reimbursement for rental income Ruelas received.  Ruelas has not filed a respondent's brief.[2]  Because Asensio has not provided a record on appeal adequate to demonstrate reversible error, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In 2015, Asensio and Ruelas, who were married in 2002, entered into a marital settlement agreement to divide their marital assets and debts.  The agreement was eventually incorporated into their dissolution judgment.  In

---

[1]    In her papers below, Elisa Ruelas appeared as Elisa Flores.

[2]    Ruelas's nonappearance does not absolve us from adjudicating the merits of Asensio's appeal.  (See *In re Bryce C.* (1995) 12 Cal.4th 226, 232-233 ["if the respondent fails to file a brief, the judgment [or order] is not automatically reversed"]; *In re Marriage of Everard* (2020) 47 Cal.App.5th 109, 111, fn. 1.)

2

it, the parties waived spousal support.[3] They terminated all joint tenancy ownerships between them with the exception of one property in Chula Vista (the Chula Vista property), which under the agreement "shall be held in joint tenancy, with right of survivorship between the parties, for as long as they both shall live." The judgment provides that "[Asensio] shall have exclusive possession of [the Chula Vista] property during his life, to be used as his personal residence" and he is responsible to pay "[a]ll taxes, maintenance, utilities, and any other fees or expenses related to the property . . . ."

The judgment further distributes "community or co-owned asset[s]" and provides the "division . . . is deemed fair and equal by the parties." More specifically, it provides Asensio "shall receive . . . [¶] . . . [¶] [f]rom [Ruelas], cash in the amount of $5,000 with this Agreement; another $5,000 within [90] days from the date of the Agreement, and the option to receive payment of up to $7,000 upon [three] months written notice, and the option to receive up to $100,000 upon [six] months written notice. In addition to these lump sums, [Asensio] shall receive a monthly payment, as long as he shall live, calculated at the rate of 1.5 [percent] of $350,000, or that sum reduced by any lump sum payment, described herein, which he has received, and payment made monthly to [Asensio]. (For instance, the first payment to [Asensio] will be $345,000 X .015 ÷12 =$431.25[.])"

The marital settlement agreement contains an acknowledgments section, in which both Asensio and Ruelas "acknowledge[ ] and declare[ ] that

_____

[3]    The marital settlement agreement is unambiguous on this point: "Neither party hereto shall be obligated to pay the other any sum or amount, as and for spousal support. Wife specifically herewith waives any claim for spousal support from Husband. Likewise, Husband specifically herewith waives any claim for spousal support from Wife." "Whether an ambiguity exists in a contract is a question of law." (*Aljabban v. Fontana Indoor Swap Meet, Inc.* (2020) 54 Cal.App.5th 482, 499.)

he or she . . . [¶] . . . [i]s fully and completely informed as to the facts relating to the subject matter of this Agreement, and as to their rights and liabilities"; . . . "[h]as given careful and mature though [*sic*] to the making of this Agreement"; and "[u]nderstands each provision of this Agreement."

In November 2022, Asensio filed a request for an order to enforce the marital settlement agreement and judgment. He amended his request in February 2023. In a supporting declaration, Asensio sought clarification of the agreement's terms. He averred that he does not speak, read or write in English and did not have an attorney represent him when he and Ruelas reached their settlement, but "relied entirely on the honesty of my ex-wife and her lawyer." According to Asensio, the agreement "clearly says I am to receive 1.5 [percent] of the principal ($350,000 less what I have already received) *per month*, not per year. So the example should have been .015 X $345,000 = $5,175 per month." He argued the "plain terms of the agreement" combined with his age (87), did not support the example set forth in the agreement or its intent, as it would take 66 years to complete the equalization under such an interpretation.[4] Asensio also sought an accounting, claiming Ruelas made five payments of about $500 in 2015 but stopped until she resumed sporadic payments in July 2020. Asensio asserted that Ruelas had rented out the Chula Vista property to tenants and denied

---

[4] More fully, Asensio stated: "The example in the [marital settlement agreement] is not supported by the plain terms of the agreement. It further makes no sense when you consider that I am 87 years old. I have received $113,810.29, leaving a principal balance of $236,189.71. Following the example calculation, I would receive $3,542.84 per year, or $295.23 per month. At that rate, it will take nearly 803 months or 66 years to complete receipt of this equalization. I do not believe that was the intent of the agreement. I should be receiving $236,189.71 X .015 = $3,542.84 per month. Even at that, it will take 66.67 months, or five and a half years to receive the entire balance, if I should live that long."

4

him its use or rental income until January 2022, when he finally moved back in. He asked for an order that Ruelas change the deed to the Chula Vista property to reflect that they owned it as joint tenants with a right of survivorship, as well as an order that he be compensated with the amount of rent Ruelas received between December 2015 and January 2022, less the property taxes and insurance. Asensio conceded that in discussions with Ruelas's counsel, the lump sums were resolved, but not the monthly payments.

Ruelas opposed the request. She asserted she had made both $5,000 lump sum payments, but that Asensio had not made a written request for the other amounts. She asserted she had continued to make the interest payments set forth in the marital settlement agreement. She also asserted that Asensio had not met his required payment obligations on the Chula Vista property. Ruelas attached letters between the parties' counsel regarding the matter.[5] In a supplemental declaration, she stated her payments due to Asensio should be offset by payments she made to cover his marital settlement agreement obligations.

In May 2023, the family court conducted an unreported hearing[6] on the matter with both parties present and represented by counsel. The court

---

[5] In part, Ruelas's counsel disputed Asensio's assertion that Ruelas denied him the right to live in the Chula Vista property; counsel asserted Asensio elected to live in another property for free rather than pay the costs of the Chula Vista property. Ruelas's counsel demanded that Asensio immediately vacate the other property, and stated Asensio would be provided with possession of the Chula Vista property once it became vacant, with the understanding he must fully maintain it and pay all of its related costs.

[6] The court denied Asensio's request for a court reporter without stating reasons for doing so. Asensio does not challenge this ruling or the part of the court's order denying him a statement of decision.

swore the parties in and examined them using a certified Spanish interpreter. It recited the documents it received and reviewed. Thereafter, "[a]fter review of the pleadings, argument, and for good cause shown," the court found "the payments are 1.5 [percent] of the lump sum balance divided into 12 monthly payments was intended by the parties [*sic*] as outlined in . . . the Judgment." It ordered Ruelas to transfer title to the Chula Vista property to the parties as joint tenants. It denied Asensio's request for rent compensation.

Asensio filed this appeal from the order.

## DISCUSSION

### I. *Principles of Appellate Review*

It is a fundamental principle of appellate review that this court will presume the family court's order is correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1484.) Additionally, as the appealing party, it is Asensio's burden to affirmatively show error. (*Denham*, at p. 566.) In doing so, he must provide an adequate record. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295; *LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Association* (2023) 94 Cal.App.5th 1050, 1070.) "We cannot presume error from an incomplete record." (*Christie v. Kimball* (2012) 202 Cal.App.4th 1407, 1412.)

Appellants typically provide a reporter's transcript of oral proceedings on appeal, but if they do not or cannot, they may submit an agreed or settled statement. (Cal. Rules of Court, rules 8.134 & 8.137; see *Leslie v. Roe* (1974) 41 Cal.App.3d 104.) While a reporter's transcript "may not be necessary if the appeal involves legal issues requiring de novo review," when a case involves review for substantial evidence or abuse of discretion, "a reporter's

6

transcript or an agreed or settled statement of the proceedings will be indispensable." (*Southern California Gas Co. v. Flannery* (2016) 5 Cal.App.5th 476, 483.) And an appellant bears the burden to provide such a record if he or she " ' "intends to raise any issue that requires consideration of the oral proceedings in the superior court . . . ." ' " (*Ibid*.; *Sanowicz v. Bacal* (2015) 234 Cal.App.4th 1027, 1034, fn. 5, citing Cal. Rules of Court, rule 8.120(b).)

As we will explain, based on the review standards applicable to Asensio's claims, Asensio has not met his burden to demonstrate error with an adequate record. Specifically, absent a reporter's transcript of the hearing on Asensio's request, we cannot review his claims of error and must presume the family court's order is correct.

II. *Interpretation of the Marital Settlement Agreement*

Asensio's first contention relates to the monthly payment provision of the marital settlement agreement, and its assertedly contradictory phrases. Asensio asks: "Did the [f]amily [c]ourt commit reversible legal error and improperly deny [him] rights under the [marital settlement agreement] by relying on a mathematical example contrary to the express terms of the [marital settlement agreement] to calculate monthly spousal support payments [*sic*] owing?" Asensio characterizes the monthly payment provision as containing a "scrivener's error," which the court wrongly found to reflect the parties' intent. According to Asensio, the family court erred as a matter of law by relying on the "entirely contradictory example which followed [the] clear provision in the [marital settlement agreement]" setting out monthly payments and "[r]esolving these directly contradictory terms in [Ruelas's] favor . . . ." Citing Family Code section 1612 and *In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, he argues spousal support agreements are

7

binding and must be "rigidly enforced" based on language that is unambiguous or clear and explicit. Asensio maintains that applying this law, the family court "had no interpretive discretion to override, modify or refuse enforcement of the unambiguous specified monthly spousal support rate of '1.5 [percent] of $350,000' clearly dictated under [the marital settlement agreement] . . . just because a later example had a lower inconsistent rate." He argues ambiguities must be interpreted in favor of granting spousal support in accordance with the best interests of the supported spouse, and "[e]quity further demands this outcome, particularly given that the [marital settlement agreement] was entirely drafted by [Ruelas's] attorney, and simply presented for signature to [him], who was over 80 years old at the time, spoke (and speaks) only Spanish, and was unrepresented by counsel."

There are several flaws in these arguments. First, Ruelas and Asensio expressly waived the right to spousal support in the marital settlement agreement; the monthly payment terms at issue appear in a section governing the division of community or co-owned property. They are not properly characterized as spousal support.[7] Hence we see no basis to apply Asensio's cited principles relating to a marital settlement agreement's spousal support provisions. Also inapposite is Family Code section 1612 and its subdivision addressing spousal support (Fam. Code, § 1612, subd. (c)). That section governs *premarital* agreements, not marital settlement agreements. Asensio gives us no basis to apply this code section to these circumstances.

Second, Asensio does not set out completely the standards applicable to the agreement's interpretation. (*In re Marriage of T.C. & D.C.* (2018) 30 Cal.App.5th 419, 424 [marital settlement agreement that is incorporated into

_____

[7]    Elsewhere, Asensio refers to them as "equalization payments."

8

a stipulated judgment is subject to the general principles of contract interpretation]; *In re Marriage of Iberti, supra*, 55 Cal.App.4th at p. 1439.) He argues the standard of review for interpreting the agreement or for "contractual disputes" is de novo and that we review for substantial evidence the family court's underlying factual findings.  He is partially correct.

" ' "The goal of contractual interpretation is to determine and give effect to the mutual intention of the parties.  [Citations.]"  [Citation.]  Thus, "a 'court's paramount consideration . . . is the parties' objective intent when they entered into [the contract].' " ' " (*Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 437-438; *In re Marriage of T.C. & D.C., supra*, 30 Cal.App.5th at p. 424.)  If a marital settlement agreement's language is clear and explicit, it governs (*In re Marriage of T.C. & D.C.*, at p. 424), and this court's review is de novo.  (*In re Marriage of Dalgleish & Selvaggio* (2017) 17 Cal.App.5th 1172, 1178.)  But " '[i]f [a stipulated judgment] is ambiguous, the . . . court may examine the record for its scope and effect and may look at the circumstances of its making.'  [Citation.]  Indeed, '[e]xtrinsic evidence is admissible to prove a meaning to which the contract is reasonably susceptible.  [Citations.]  If the trial court decides, after receiving the extrinsic evidence, the language of the contract is reasonably susceptible to the interpretation urged, the evidence is admitted to aid in interpreting the contract . . . .  [¶]  The threshold issue of whether to admit the extrinsic evidence—that is, whether the contract is reasonably susceptible to the interpretation urged—is a question of law subject to de novo review.' " (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 948; see also *Brown v. Goldstein*, at p. 433.)

Given these principles, " '[t]he ultimate construction placed on the contract might call for different standards of review.  When no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in

9

conflict, the appellate court independently construes the contract. [Citations.] When the competent extrinsic evidence is in conflict, and thus requires resolution of credibility issues, any reasonable construction will be upheld if it is supported by substantial evidence.' " (*In re Marriage of Minkin*, *supra*, 11 Cal.App.5th at p. 948.)

We have no difficulty concluding as a matter of law that the marital settlement agreement is reasonably susceptible to two differing interpretations as to the lifetime monthly payment Ruelas owed Asensio. On the one hand, it specifies Asensio "shall receive a monthly payment . . . calculated at the rate of 1.5 [percent] of $350,000, or that sum reduced by any lump sum payment, described herein, which [Asensio] has received . . . ." Because Asensio eventually conceded Ruelas met her obligation to make the lump sum payments, that provision would entitle Asensio to monthly $3,495 payments ($350,000 - $117,000 = $233,000 x .015 = $3,495) during his lifetime. On the other hand, the agreement contains the following example— "(For instance, the first payment to [Asensio] will be $345,000 X .015 ÷12 =$331.25)"—dividing that sum by 12. The agreement in this respect is conflicting on its face.

On this record, our conclusion about the ambiguity of the marital settlement agreement means we must resolve the appeal in Ruelas's favor. In its order, the family court stated it based its decision on the briefing and argument, and it took sworn testimony from the parties, who were present at the hearing. The parties' underlying papers contain conflicting statements and evidence, which the family court had the authority to weigh and resolve. We have " ' "no power to judge . . . the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses, or to resolve conflicts

10

in the evidence or in the reasonable inferences that may be drawn therefrom." ' " (*In re Marriage of Battenburg* (1994) 28 Cal.App.4th 1338, 1343; see also *Wells Fargo Bank, N.A. v. Weinberg* (2014) 227 Cal.App.4th 1, 8.) We have no way to determine what the parties argued or conceded, and the record is absent the family court's oral remarks or findings.

Under the appellate principles discussed above, we must presume that in reaching its decision about what the parties intended for the monthly payment calculation, the family court considered conflicting extrinsic evidence of Ruelas's and Asensio's objective intent and resolved it in Ruelas's favor. In the face of such conflicting evidence, we may not independently interpret the marital settlement agreement as a matter of law, but must uphold any reasonable construction of the agreement. (*In re Marriage of Minkin*, *supra*, 11 Cal.App.5th at p. 948.) Indeed, on this record, Asensio cannot make a substantial evidence argument (*In re Marriage of Hall* (2000) 81 Cal.App.4th 313, 316); we must conclusively presume evidence was presented that is sufficient to support the court's findings. (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154.) Since Asensio's appeal is not based on a reporter's transcript, " '[t]he question of the sufficiency of the evidence to support the findings is not open.' " (*Allen v. Toten* (1985) 172 Cal.App.3d 1079, 1082.) Without a transcript of the hearing on Asensio's request or a suitable substitute, Asensio cannot overcome the presumption that the family court's order is correct.

III. *Order Denying Asensio Rental Income Compensation*

Asensio phrases his second issue as: "Did the [f]amily [c]ourt wrongly deny [his] right to a fair rental value compensation despite finding [Ruelas] violated the [marital settlement agreement] by unlawfully denying [him] use and rent profits from the [Chula Vista property] for over six years? He

11

argues the "lower court's outright denial of fair rental value compensation to [him] . . . under a joint tenancy clause—after affirmatively finding [Ruelas] willfully violated the [marital settlement agreement] for over six years by renting out the [Chula Vista property] exclusively reserved for [his] residency while retaining full profits—constitutes reversible abuse of discretion warranting redress." He maintains Ruelas received "windfall gains from admitted violations" and that Family Code section 1101, subdivision (e)[8] mandates he be compensated for them.

We have scoured the record and are unable to locate an express or "affirmative[ ]" finding by the family court that Ruelas violated the marital settlement agreement by renting out the Chula Vista property. There is no basis to conclude on this record that the court determined there were, as Asensio phrases it, "proven contractual violations regarding [his] exclusive possession rights . . . ." Nor can we conclude absent a reporter's transcript of the proceedings and the parties' sworn testimony that the court's order "contravened undisputed facts" as he claims. Asensio's contention does not present a question of law; he asks us to hold the court's order was an abuse of discretion and reverse it "as a matter of equity . . . ."

We cannot review these claims. Rather, we must presume on this record the evidence considered by the court at the hearing supported its

_____

8    Family Code section 1101, subdivision (e) provides: "In any transaction affecting community property in which the consent of both spouses is required, the court may, upon the motion of a spouse, dispense with the requirement of the other spouse's consent if both of the following requirements are met: [¶] (1) The proposed transaction is in the best interest of the community. [¶] (2) Consent has been arbitrarily refused or cannot be obtained due to the physical incapacity, mental incapacity, or prolonged absence of the nonconsenting spouse." Asensio does not explain how these circumstances present a "transaction" within the meaning of this statute.

12

decision, whether factual or equitable, to deny Asensio's request to be reimbursed rental income. In short, "[b]y failing to provide an adequate record, [Asensio] cannot meet his burden to show error and we must resolve any challenge to the order against him." (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348.)

## DISPOSITION

The order is affirmed. The parties shall bear their own costs on appeal.


O'ROURKE, Acting P. J.

WE CONCUR:


IRION, J.


CASTILLO, J.